Mr. Ehrlich. I'm Mr. Ehrlich. Thank you. Yes. Jeffrey Ehrlich for the appellant DeCarlo. Good morning, and may it please the Court, a first for me for the new age of video. I'm going to try to reserve five minutes of my time for rebuttal, and I understand that you've already delved into some of the issues presented here. This is an appeal from an order dismissing the plaintiff's case at the pleading stage. The district court's reasons for the dismissal are stated on an order, and at page 9 of volume 1 of the ER. And the dismissal rests on two types of findings. The first is that the allegations of the Second Amendment complaint were not sufficient to show any wrongful conduct by the defendants that violated any provisions of California law. And the second is that the allegations of the Second Amendment complaint were not sufficient to show that DeCarlo had suffered any injury in fact, which is a necessary predicate for both Article III standing and a stated claim under the California statutes. I had intended to discuss the allegations of wrongful conduct first because it seems to me that without that predicate, it's hard to show what the injury was. But my understanding from the brief discussion I had with Mr. Kavitak was the court had particular interest in what our allegations were that showed that we had pleaded that Mr. DeCarlo had suffered any harm. So I can address either issue, but if you don't have a preference, I would think it makes sense to start with whether there were adequate allegations of violations of law and then to show how Mr. DeCarlo was affected. If it's helpful to you, Counsel, my primary question has to do with whether you've adequately pleaded lack of independence. Okay. I think that the lack of independence is both expressly pleaded and is appropriately inferred from the factual allegations that describe the relationship between Costco, MB&R, and the optometrists. So we go on pages 9 to 24 of our opening brief about that relationship and how they violate the three relevant two statutory provisions and then the regulation that supports them. But the essence is that the statutes, former Section 655, forbids certain kinds of relationships between registered opticians, RDOs like Costco, and optometrists. And then in addition, Section 2556 of the Business and Profession Codes also violates those. So Section 655 prohibits a host of affiliations between the RDOs, including ownership, profit sharing, and is relevant here, a landlord-tenant relationship. And that that prohibition expressly extends to both direct relationships and indirect relationships. So you can't have a landlord-tenant relationship directly or indirectly between the RDO and the optometrist. So what you're doing is telling me why you think the lease agreement violated the law. Right. I'm asking a different question. Okay. I'm asking about factually, what have you pled that tells me or allows me to fairly infer that this optometrist was in fact not independent? Well, what we have pleaded in these allegations, and I can either go through them specifically, but I'll start by summarizing if you have any questions, are that the nature of the lease agreement gives Costco, the defendants, the right to control, and they do in fact exercise or attempt to exercise control over significant aspects of the optometrist's practice, the hours that they're available, the prices that they charge, the equipment that they use. But do you allege, to follow up on Judge Christen's question, do you allege anything in your complaint that says as a result of that Dr. Rhodes was not independent? Yes. Well. And where do you allege it? All right. I mean, we specifically say in Paragraph 64, I think, or 74, that as a result of ‑‑ sorry. I have it laid out. This is Paragraph 74. So it's 2ER, Page 64, Paragraph 74. It says, in fact, Rhodes, as with every other tenant optometrist in Costco's stores throughout California, was a tenant under the same lease described earlier in the complaint and was thus operating under the same exact control and influence as former Costco optometrists whose experiences were related earlier in the complaint. As such, and in contradiction of the unqualified representation that Rhodes was an independent doctor of optometry, Rhodes was subject to defendant's control and influence regarding material aspects of her day-to-day practice, including at minimum the hours of operation, the fees that she charged, the services she advertised, the therapies she offered, the length of her exams, the scope of her exams, and the equipment she used to conduct the exams. So that's what we allege. Counsel, do you have ‑‑ and they come back and argue promptly that you're making conclusory statements there. To what extent do you rely on the experience of former optometrists who worked under this lease agreement? I understand you've alleged that they all work under an identical agreement, but to what extent do you rely on that? Well, we certainly do rely on it, to the extent that we lay out the specifics of the lease terms and then we allege the way that those terms are, in fact, applied to the tenant optometrists. We cite statements from other Costco optometrists that have said that they were pressured to do the various things. And so we draw a line, in essence, saying a connection between the ability of these provisions that give Costco and NBNR the right or the ability to influence and to direct the practices of the optometrists. And then we show that it's not just a theoretical problem, that there are optometrists who have testified that that is exactly what happens. I think that, therefore, these are sufficiently concrete factual allegations that under Iqbal and Twomley, they can't just be disregarded. They're not pleading the bare bones of a form complaint. So forgive me for interrupting, but, again, I'm asking about what allows us to make the reasonable inference. My question specifically is, are you saying it's a reasonable inference because we have other optometrists who have shared their experience and you've alleged that in your complaint? Is that what I'm hearing you say? Your Honor, I guess I'm trying to get at this specific point. We are relying on that as evidence to support the reasonableness of the inference that the leases that have these provisions are, in fact, enforced in a way that have the effect that we have pleaded that they were intended, that they had compromised the independence. Let me stop you there. Have the effect to do what? Have the effect to do what? I understand what your argument is on this point, but what do all these conditions, what does it cause the optometrist to do that would mean that that person, in this case Dr. Rhodes, gave up their professional independence? The allegations are that Costco wanted a high-volume, high-turnover practice to write as many prescriptions as possible for the kinds of things that Costco sold in its optical department. So, therefore, instead of maybe recommending LASIK or... You know, I wear glasses, as do you. We all do. We all do. So I walk in, I go by, and I see this Costco ad, and I get an appointment. And I walk in, Dr. Rhodes says, nothing wrong with your eyes. I pay $49. What did these arrangements that she had with Costco and the other MBNR, how did that strike her independence? We specifically have alleged that, or given examples, that Costco optometrists are not allowed to advertise and discouraged from discussing LASIK, for example, as a treatment if you wanted a permanent correction of nearsightedness because Costco doesn't offer LASIK, and so they don't want their optometrists to do that. We've alleged that optometrists were discouraged from using corrective contact lenses. Yeah, but you didn't allege that here. You didn't allege that as it relates to the lead plaintiffs here. That's a general allegation. It is an allegation that, let me take a step back. The purpose of these statutes in California is to avoid the opticians from having economic pressure or leverage or being able to influence the practice of optometry. That's the purpose. And so that's why there are certain relationships that are prohibited. That was a legislative judgment that was made that we don't want to have these relationships. But I think it goes back to where we are in this case and the other is evaluating whether the people who have filed this litigation have the standing to make that allegation. Okay. Mr. DeCarlo has pleaded that had he known about the relationships and had he not been told that the Costco optometrists were independent and if he had understood the realities of the situation, he wouldn't have signed up for an exam with a Costco optometrist. That's enough to satisfy Article III standing under Kwikset and under Hinojosa. Well, I'm not sure unless that's what you'd like us to find. Of course. But I'm not sure unless somehow that set of circumstances and those conditions under which Dr. Rhodes operated in that Costco store impacted her professional judgment. Well, it sounds like the argument you're making is that we have an element of making a UCL claim would have to show that there was something substantively flawed in the examination. No, I think all I am suggesting is that you have to show, as Judge Christin also asked, can you show that this doctor was not independent? And I don't know how you show that. You may not be able to show that. I don't know how you show that based on these sets of facts without somebody who got a diagnosis that was different to what they should have received because of the lack of independence. Judge Fischer, in the National Association of Optometrists versus Brown decision from this court, it was a 2009 decision, at page 526, this court explained that the purpose of Section 556 was that California sought to protect optometrists from being affected by subtle pressures from commercial interests. And said, and this is a quote, potentially even a landlord-tenant relationship could undermine health care quality if the landlord required a certain level of performance to maintain the lease. That's precisely what we've alleged, that in order to keep their leases, the optometrists that Costco leases their space to have to do it Costco's way and they have to have a high-volume practice that stresses the things that Costco sells and doesn't talk about or discuss or recommend the things that Costco doesn't sell. I guess after post-Prop 64, wouldn't that be the job of the California Attorney General to resolve that question? No, Your Honor. Proposition 64, as this court explained in Hinojosa, was to make sure that you couldn't have people who never wanted to purchase the product at all just go out and say, oh, point to an unfair business practice. We have a plaintiff who purchased the product and claims, I wouldn't have done it if I'd understood the illegality and the connections that were here. Has any California court ever said this kind of arrangement between Costco and MB&R is illegal? There's a host of, going back, we discussed it in the complaint. I don't know that there's a specific, there have been challenges to the statute and the statute has been upheld. I don't know if there's been a court that specifically held the optician liable for renting space, but the statute says you're not allowed to be a landlord directly or indirectly. The regulation supporting it says that if there is going to be a lease with an optometrist, the optometrist has to be independent in every aspect of the practice. Do you want to take some time for rebuttal? Yeah, I'd like to. Thank you. May it please the Court. I'm Joseph Palmore here on behalf of Costco. The district court correctly dismissed this complaint for lack of standing, for lack of alleging any cognizable injury from the violations of law that are pleaded here. And I'd like to start with the misrepresentation claim, which has been the focus. How is this case different from Hinojos? This case is very different from Hinojos for a fundamental reason. In Hinojos, it was undisputed that there was a misrepresentation. The goods were advertised as being on sale, and in fact they weren't on sale. That was always the price. So it was undisputed that there was a misrepresentation. I can't remember, was Hinojos decided on summary judgment or was it on? Hinojos was on summary judgment, Your Honor, I believe. We're on 12b-6 here. We are. Or 12b-1. Right. So you look at the pleadings, you look at the pleadings, and it was the plaintiff's obligation to plead that the doctor of optometry was not in fact independent. Well, they make a number of allegations, as we've just heard, and in the end he says, well, he pledges this sign, was it in Costco, independent optometrist. He says, well, if I'd known that they really weren't independent, I wouldn't have paid $5 for an eye exam, let alone $49. Why isn't that in Hinojos? Because in Hinojos there was a misrepresentation, and here there isn't one. He hasn't properly alleged that Dr. Rhodes was not independent. And the allegations in the complaint almost exclusively go to other optometrists. And to take – Hold on with that, counsel, right there. Could you stop the action right there? Because I think that's their strongest argument here, that the leases were all the same and that we should make this reasonable inference, again, at 12B6 and only on standing – forgive me, 12B1 and only on standing grounds, that other folks who have labored under – within the same professional constraints and labored under the same lease terms have the reasonable inferences that they were not independent. Isn't that their strongest argument? Why is that not enough? I think that is their argument, and it's not enough because what they've taken is a couple anecdotal examples about other optometrists without any detail, and they are trying to leverage those one or two anecdotal stray examples to say, therefore, Dr. Rhodes herself was not independent. Why is it 12B6? That strikes me as twombly, as maybe conclusory. I get the hat, but it's a separate inquiry, and the argument you're making is one that strikes me as really doing considerable violence to our standing jurisprudence. That's my concern. I'm going to give you a chance to respond. Your Honor, I don't think it is because the argument we're making is limited to the four corners of this complaint and its inadequacies. And while the plaintiffs are, of course, entitled to reasonable inferences, they have to be reasonable. And pointing to one or two examples of other optometrists and, therefore, saying, well, that must mean that Dr. Rhodes was also not independent is simply not adequate. Spokio and other cases hold that a plaintiff, even a lead class representative, has to claim injury as to him or herself. This case, and to piggyback on a hypothetical that Judge Fischer asked, this would be like if in Kwikset the plaintiffs said, well, maybe the lock set that I got was made in the USA, but the lock sets that some of these other customers bought weren't. That would be inadequate. In Kwikset, it was undisputed that the lock set that the person, the plaintiff, himself bought was not made in the USA. Here, there are no allegations. Forgive me for interrupting. Was that a summary judgment or a motion to dismiss, or was it summary judgment? No, I believe that was after trial, Your Honor, in Kwikset. Oh, that's right, that's right. So that's the problem. We're at this very preliminary stage, and I don't dispute those factual findings, but you're wanting us to boot this right at the gate. Your Honor, based on the inadequacies of the pleadings, because it's simply not a reasonable inference that because these one or two stray optometrists had certain experiences that Dr. Rhodes had those experiences, this complaint is completely bereft of any allegation that Dr. Rhodes herself was not independent. For instance, she wrote a prescription. So again, to get you to focus on, absolutely bereft strikes me as a stretch because I think it's uncontested. The leases were identical, and I've got other folks who worked under the same terms and felt this kind of pressure. So what's your response to that specific question? Because for me, that's the nub of it. Right. The leases, of course, by their terms, guarantee the independence of the optometrist, and they're relying on simple, generic commercial terms between landlord and tenant. And I think I'd like to go to answer your question, Judge Fischer, to paragraph 74, which is the paragraph in the complaint that my colleague on the other side pointed to as the nub of his allegation. This is page 64 of the excerpts of record. And really all this is is a summing up of the allegations as to other optometrists. He states that Dr. Rhodes must have been subject to the same exact control and influence as the former Costco optometrist whose experiences were related earlier in the complaint. And critically, in the next sentence, he says that Rhodes was subject to defendant's control and influence, citing the provisions of the contract. But there's no allegation that Costco or MB&R ever used this theoretical ability to control with respect to Dr. Rhodes. There's no allegation that it told her to write prescriptions that were unwarranted. There's no allegation that – It isn't the allegation or the contention. What they want to show is that just the way this whole structure results in that kind of control. Your Honor, they have to – their obligation – his obligation to show standing is that – It's a reasonable inference that these optometrists who work at Costco just aren't independent. I don't think it is a reasonable inference, Your Honor, from based on one or two stray examples when you've got a contract that by its terms guarantees independence. And he hasn't alleged, for instance – one can imagine someone alleging, I got a prescription for glasses, but then I went to another optometrist, and they told me my eyes were fine. I didn't need glasses. That would be an example, perhaps, of an allegation of a lack of independence with respect to Dr. Rhodes. There's simply no allegation like that here. Well, but that would be a different claim entirely. That would be a claim that's sort of malpractice, right? He's not alleging that. The it, when you say I didn't get what I paid for, the thing he bargained for, according to the complaint, is the independent exam, not an exam that was free from fault. He's not alleging fault, right? Right, Your Honor, but he has to allege that somehow the exam he received was not independent, that whatever Dr. Rhodes did in that exam room, and he doesn't have any allegations about it at all, was not the product of her exercise of independent medical judgment, but was instead the product of coercion or control by MB&R or Costco, and there's simply no allegation like that here. He doesn't even allege that he got a prescription. There's nothing about this exam. There's nothing about Dr. Rhodes herself. There's nothing about her relationship with anyone at MB&R or Costco other than the generic terms of the contract, so he hasn't shown that there was any harm here, that he himself didn't get the benefit of the bargain of an independent exam from a doctor of optometry. If I'm understanding your argument correctly, a plaintiff to have standing would have to have then gone to another eye exam and be able to allege that the first eye exam was somehow faulty, inadequate, and then further allege that that was because of an economic pressure. It doesn't sound like you would accept standing even if this person could say that the exam was faulty. You would still argue traceability. I was using that as an example, Your Honor. I'm sure there could be other ways. In fact, in the first complaint, there was an allegation now withdrawn that he didn't receive the comprehensive eye exam that he should have, that there were problems with that allegation because it was entirely conclusory and he didn't allege what a comprehensive eye exam would be, but he tried at the outset of this case to actually make an allegation with respect to this eye exam and he tried and failed to show some kind of connection between the supposed lack of independence and the eye exam here. The Second Amendment complaint that comes up before this Court has no allegations at all with respect to his eye exam, no allegations at all with respect to Dr. Rhodes. The problem that I guess you need to help me understand here is the district court knocked this out simply on standing. Yes, Your Honor. No injury in fact. No injury in fact, and I read it as no traceability as well. And then you could say that, well, he also did that for statutory standing purposes as well because the focus here seems to be on the economic. Yes, Your Honor. But when I read INOJOS and look what was alleged here, at this very early stage it seems like what they alleged is sufficient to meet INOJOS. Whether they can prove any of this, whether they can get beyond a summary judgment, maybe they've got a tough road to hoe. But I'm still having a hard time taking your approach or your understanding of INOJOS in light of the allegations that are here and in light of what was alleged in INOJOS. Well, Your Honor, INOJOS didn't deal with the issue that we've been talking about today because there was no dispute in INOJOS that there was a misrepresentation. And the only issue there was what flowed from that. Here we're asking the anterior question that wasn't presented in INOJOS, which is, is there actually an allegation of a misrepresentation? Well, they allege that there was a sign in Costco that said independent optometrist, right? Yes. And then they allege all these facts. Well, no, it wasn't. It wasn't an independent optometrist. And it's that last piece. And I paid. I wouldn't have paid. Had I known that at the time I got the service, I wouldn't have paid five cents. See, I've lowered the price. Costco's from 25 bucks to, you know, I'd pay anything. I'd pay nothing for that. Well, there is the wrinkle that he says, as my co-counsel in the Walmart case pointed out, that he says the exam was too cheap, which is another distinguishing feature here. But I think it's all that other stuff in your honors question where this falls down. Because, yes, he says, I was promised an independent doctor of optometry. INOJOS says, if you're not delivered what you were promised, you don't get the benefit of the bargain. Here he was delivered that. Or to put it more precisely in the context of the pleading stage, he hasn't properly alleged that he didn't get what he was promised. He needed to plead that he didn't get an independent doctor of optometry. And he didn't plead that here. Shifting, if I could, and I want to cede a few minutes to Mr. Byrne from NBNR, but just to quickly jump to the unlawfulness point, because they've made a separate argument there. And that falls down under plain Article III standing under Spokio, that you can't just allege a bare statutory violation and say that I'm harmed. And then under Demeter v. Taxi, which Walmart's counsel also called out, and that both parties have submitted as a 28-J, it's clear under California law that just simply a bare allegation of illegality doesn't get you the economic injury you need to get into court. Counsel, before you leave that point or the podium, the lectern rather, my understanding there is that the real problem is traceability on the unlawfulness prong. Because the allegations relied on a sign on the wall, not on a lease agreement. Is that what you're going to, or are you making a different point now? On unlawfulness, they argue that, well, because we've alleged these technical violations of these various statutes and I paid for this product, therefore the economic injury is the amount that I paid. And what California law says, as most crisply presented in Demeter v. Taxi, is if you want to make that kind of argument, yes, you have to trace the statutory violation to some defect in the product or service that you obtained. I understand. Thank you. Thank you, Your Honor. We'll hear from your counsel for the other appellee. Thank you, Your Honor. May it please the Court, Martin Byrne, Munger, Tolson, Olson for MB&R, Inc. And I will just briefly address a separate point that we briefed in our papers, which is that if the panel decides that standing has been adequately pled in this case, then I would urge the Court to exercise its discretion to also reach the alternative grounds for affirmance as to my client. It's a pure legal issue that's before the Court. It's been fully briefed both below and in this Court, and it was essentially, at least on the restitution point, decided by Judge Houston in the reasoning of his decision. The examination at issue in this case occurred in 2012, and if MB&R is to go back down with Costco to further litigate, it will be many years before we return to this Court again. In a case where there is no claim against my client, specifically under the UCL, you need to have a remedy in order to have a claim, and here there is no remedy. There is no injunction sought, the primary relief under the UCL. Plaintiff concedes the standard here is the price paid minus the value received, and his own allegation is that as a result of the alleged unlawful activity, he paid a lower price than he otherwise would have. So he has no economic injury to recover under restitution. The same applies to the false advertising law claim. Again, no restitution there, and in fact, he hasn't even pled that the alleged advertising was from MB&R. He only pleads that that was from Costco. And then finally on the CLRA claim, we've established that there was no pre-litigation demand letter as required under California law. The appellant here has continued to assert that there was a waiver because that issue wasn't raised in response to the first amended complaint. The CLRA claim was not alleged against MB&R in the first amended complaint, and that's why it was not moved at that time. So we just urge affirmance on the separate alternative grounds as to MB&R. Okay, thank you. Thank you. I think for my purposes, what's important is that the legislature has declared prophylactically that certain types of relationships between opticians and optometrists are forbidden because it was the legislator's judgment that those relationships undermined the independence of the optometrists, and they wanted to prevent that pressure from being there. And I do not believe that opticians could violate those statutes and then defend the violation by saying, well, maybe we entered into the improper relationships, but it didn't actually have any effect. The legislature made the judgment that by prohibiting these relationships, you didn't need to get into the specifics of did this particular lease provision affect this particular optometrist. You do it at a generalized level. The allegations are clear that the defendants here, their relationships did violate these statutes. You have a very clear indirect landlord-tenant relationship. You don't have independence in every aspect of the relationship, and as a result, you have the lack of independence that the legislature said is forbidden, and it is appropriate and sufficiently alleged in the complaint that there was a lack of independence, and I'm out of time. Would you just address the remedy? What is the relief you're seeking? It would be it's restitution, and it's essentially against NBMR as an aider and a better, which is appropriate under the statute. What is the restitution amount that you're seeking? The full value of the? It would have to be the differential between what people would pay from a captive optometrist versus one that was, if they knew it was independent. And that's going to take an economist to operate. I assume. I was brought in for the appeal to deal with the issue of whether they're standing and whether the case can proceed. Well, as the counsel said, there's always the option we have of affirming on other grounds. I understand that, Your Honor. We've addressed those in the reply. I don't think that those are factual issues that I don't think can be resolved appropriately. Okay. Thank you. Matter submitted. Thank you, counsel. We appreciate your arguments in these cases, or in this case. And it's submitted.
judges: Fisher, Paez, Christen